IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Whatman, Inc., | ) |
|          Plaintiff, | ) Civil Action No. 8:08-2103-RBH-WMC |
| vs. | ) **O R D E R** |
| Bradley F. Davin and ID Biological Systems, LLC | ) |
|          Defendants. | ) |

The matter is before the court on the plaintiff's motion to compel (doc. 155). On July 23, 2009, the Honorable R. Bryan Harwell, United States District Judge, referred all pretrial matters pertaining to discovery to this court for disposition. As required under Judge Harwell's scheduling order, a conference was held before this court on November 25, 2009, prior to the filing of the motion at issue.

## BACKGROUND

Plaintiff Whatman, Inc., is a "leading provider of blood specimen collection devices for neonatal blood screening ... and storage" (comp. at 1). The plaintiff alleges defendant Bradley F. Davin ("Davin") misappropriated and disclosed Whatman's trade secrets related to "903 Cards," which are neonatal blood screening cards approved by the Food and Drug Administration and submitted to public health agencies for public health purposes. Whatman alleges Davin, through his long-time employment with Whatman's sole blood card supplier, Eastern Business Forms, Inc., ("EBF"), obtained access to Whatman's secret and confidential information concerning the blood cards sold by Whatman. The complaint further alleges that Davin took steps to create a competing blood card business in October 2007, left his employment with EBF in February 2008, soon started his own

company, defendant ID Biological Systems, LLC ("IDB"), and began sharing Whatman's secret, confidential information with Whatman's competitor, Ahlstrom.

The plaintiff alleges causes of action for misappropriation of trade secrets and confidential and proprietary information; unfair competition; unjust enrichment; breach of fiduciary duty against Davin; conversion; and aiding and abetting breach of fiduciary duty against IDB. The defendants responded with counterclaims alleging conspiracy, bad faith, interference with contractual relations, and predatory antitrust violations.

## **MOTION TO COMPEL**

### *Barbara Metz' Home Computer*

Barbara Metz, an employee of defendant IDB, testified that she regularly worked at home for IDB, using her home computer, because there were not "enough hours in the day to do what needed to be done" (pl. m. to compel, Taber decl., ex. 4, 5/11/09 Metz. dep. at 18). The plaintiff argues that under Judge Harwell's June 25, 2008, order granting expedited computer forensic discovery, the defendants should have turned that computer over for imaging. Accordingly, when Ms. Metz gave the above-quoted testimony, counsel for Whatman immediately called "for the production of [Ms. Metz's] Dell computer … at home" (*id.*, Metz dep. at 21). That request was followed up by a letter to counsel for defendants on June 16, 2009, requesting access to "Ms. Metz's home computer" (*id.*, ex. 3). Predecessor counsel for defendants stated in a letter dated July 10, 2009, "We will, of course, be willing to make arrangements for the imaging of [Ms. Metz's computer] subject to our review of the images for assertion of privilege or confidentiality." However, counsel noted that "Ms. Metz is no longer an employee of [IDB] and, therefore, while we will certainly request her assistance in this regard, I cannot make any guarantees" (*id.*, ex. 6 at 2). Predecessor counsel was shortly thereafter granted leave to withdraw as counsel. When Whatman pressed the issue, defendants' current counsel responded by letter dated

November 11, 2009, "we do not agree to provide [Ms. Metz's] personal computer" (*id.*, ex. 16 at 2). Ms. Metz is now re-employed by IDB. The plaintiff asks the court to compel production of Ms. Metz's home computer.

The defendants argue that the plaintiff is on a "fishing expedition that is highly unlikely to uncover information that is anything but cumulative and duplicative," because Ms. Metz would take the work that she did on her home computer back to her work computer, which has been imaged. The defendants further argue that "[s]imply because Ms. Metz is an employee of IDB in no way grants IDB the authority to make her turn over her personal items." The defendants contend that the plaintiff should have requested the personal computer through a subpoena (def. resp. m. to compel 9). This court agrees that the plaintiff's informal request for a forensic copy of Ms. Metz's personal home computer does not impose upon the defendants the burden of producing property outside its possession and control. Therefore, this request is denied.

***Documents and Interrogatory Responses Pertaining to PerkinElmer***

Non-party PerkinElmer, Inc., ("PKI") is a leading provider of technology, services and solutions to the diagnostics, academic research, environmental monitoring and safety and security markets. It designs, manufactures, markets and services components, systems, and products. On April 27, 2009, PKI issued a press release announcing that PKI and IDB had entered an agreement whereby PKI would act as the exclusive, worldwide distributor for IDB's blood cards. On November 3, 2009, this court issued an order granting PKI's motion to quash the plaintiff's subpoena to PKI, finding "that compliance with the subpoena is unduly burdensome on PKI, and the discovery sought can be obtained from more reasonable discovery methods, namely pursuit of full responses by the defendants to interrogatories and requests for production along with additional or supplemental examination of the defendants' electronically stored documents" (11/3/09 Order at 3).

The plaintiff argues that the defendants have failed to produce a single document reflecting their distribution arrangement with PKI or discussions thereof, or to respond substantively to its interrogatories pertaining to PKI. The plaintiff contends the defendants have also refused to make IDB's hard drives available for supplemental imaging, all in violation of the November 3rd order.

In July 2009, the plaintiff sought from defendants:

(a) their communications with PKI, its parent, subsidiaries and/or affiliates, including but not limited to PerkinElmer Health Sciences, Inc. concerning neo-natal screening cards;

(b) documents provided by IDB to PKI;

(c) all drafts, and the signed version, of IDB's distribution agreement with PKI;

(d) all documents concerning the IDB/PKI distribution agreement; and

(e) all documents concerning sales of neo-natal screening cards to third parties by and/or through PKI.

(Pl. m. to compel, Taber decl., ex. 1, 2, 7, 8, 9). The plaintiff also served interrogatories requesting such information. Interrogatories No. 3 and 4, for example, requested identification of all agreements with PKI and communications pertaining to such agreements (*id.*, ex. 9). Interrogatory No. 8 sought identification of all documents that the defendants provided to Ahlstrom or PKI (*id.*). The defendants refuse to respond to these discovery requests on relevance grounds (*id.*, ex. 10). In defendants' response to Interrogatory No. 8, the defendants referred Whatman to their production of documents through the Stroz imaging of computers on June 30, 2008 – more than nine months before the PKI deal was announced (*id.*). The plaintiff asks that the court now compel defendants to produce all requested PKI documents, to make their hard drives available for supplemental imaging, and to provide full and complete responses to Interrogatories No. 3, 4, and 8.

4

The defendants argue that the plaintiff has failed to formally request documents pertaining to PKI through a request for production. The defendants further argue that any documents pertaining to PKI are irrelevant to this litigation because the business relationship with PKI did not arise until well after this litigation began. The defendants further contend that they should not have to supplement their responses to the plaintiff's interrogatories pertaining to PKI, to which the defendants objected on September 21, 2009, because the plaintiff's motion to compel on this issue is untimely.

This court has reviewed the parties' memoranda and exhibits and finds that the PKI documents should be produced to the plaintiff. The defendants are directed to produce the requested documents labeled as (a) through (e) above and to provide supplemental responses to Interrogatories No. 3, 4, and 8, no later than December 21, 2009. The plaintiff, however, has shown no basis for supplemental imaging of IDB's hard drives, and this request is denied.

*Documents Requested During the 30(b)(6) Deposition of IDB*

At the October 12-13, 2009, Rule 30(b)(6) deposition of IDB, counsel for Whatman requested the production of certain documents and information, which have not yet been produced. First, in connection with the defendants' post-deposition firing and subsequent rehiring of Ms. Metz, the plaintiff has requested the specific dates when: (1) Ms. Metz called and informed Mr. Davin that Whatman was trying to interview her; (2) Mr. Davin spoke with Ms. Metz; (3) counsel for defendants advised Ms. Metz that she did not need to speak with Whatman if she did not want to; and (4) Mr. Davin called Ms. Metz to rehire her. Mr. Davin could not remember these dates, but stated in his deposition that he would provide this information, yet he has not done so (*id.*, ex. 11, 10/12/09 Davin dep. 117-20, 123-24). The defendants state that they have provided the plaintiff with Ms. Metz's fire

5

and rehire dates. The defendants are directed to provide the plaintiff with the remaining dates no later than December 21, 2009.

Second, the plaintiff requested all specification approval sheets at IDB, including all iterations of the document marked as Exhibit 45 at the Rule 30(b)(6) deposition of IDB (*id.*, ex. 12, 10/13/09 Davin dep. 290-91). The plaintiff claims this IDB specification approval sheet "is significant because it appears to contain Whatman Protected Information stolen by IDB." Third, the plaintiff requested the name of the consultant who assisted Ms. Metz with the design and layout of the IDB specification approval sheets (*id.*, ex. 12, 10/13/09 Davin dep. 288-89). The plaintiff claims this information is significant because Davin testified that he left the creation of IDB's specification approval sheets to Ms. Metz and this consultant (*id.*). The plaintiff argues that because this consultant therefore likely participated in, or would have known about, the inclusion of Whatman's Protected Information in the specification approval sheets, it is entitled to learn his name and interview (or, if necessary, depose) him. Defendant Davin agreed at his deposition to provide that information as well (*id.*, 10/13/09 Davin dep. 289), but has not done so.

The defendants argue that the plaintiff's request for this information is untimely and cumulative of the information already within Whatman's possession and control. This court has reviewed the parties' memoranda and exhibits and finds that the information should be produced to the plaintiff. The defendants are directed to provide the specification approval sheets and the name of the consultant no later than December 21, 2009.

### *30(b)(6) Deposition of IDB Transcript*

At the beginning of the October 12, 2009, 30(b)(6) deposition of IDB, counsel for the defendants designated the entirety of the 30(b)(6) deposition as "Attorneys' Eyes Only" (*id.*, ex 11, 10/12/09 Davin dep. 5). The plaintiff argues that the designation was

6

over-broad and abusive. The defendants argue that this request is premature because the plaintiff failed to consult with them in an attempt to resolve this matter. The defendants further state that they "intend to respond to this request for redesignation by redesignating certain portions of the IDB 30(b)(6) deposition transcript on or before Tuesday, December 8, 2009" (def. resp. m. to compel 9). Based upon the foregoing, it appears that this issue is now moot.

Based upon the foregoing, the plaintiff's motion to compel (doc. 155) is granted in part and denied in part as set forth above.

IT IS SO ORDERED.

s/William M. Catoe
United States Magistrate Judge

December 9, 2009

Greenville, South Carolina