IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Whatman, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> Bradley F. Davin and ID Biological Systems, LLC <br><br> Defendants. | Civil Action No. 8:08-2103-RBH-WMC <br><br> **REPORT OF MAGISTRATE JUDGE** |

The matter is before the court on the defendants' motion to amend their answer and counterclaims (doc. 103). On November 5, 2009, the motion was referred to this court for a report and recommendation by the Honorable R. Bryan Harwell, United States District Judge.

## BACKGROUND

Plaintiff Whatman, Inc. is a "leading provider of blood specimen collection devices for neonatal blood screening ... and storage" (comp. at 1). The plaintiff alleges defendant Bradley F. Davin ("Davin") misappropriated and disclosed Whatman's trade secrets related to "903 Cards," which are neonatal blood screening cards approved by the Food and Drug Administration and submitted to public health agencies for public health purposes. Whatman alleges Davin, through his long-time employment with Whatman's sole blood card supplier, Eastern Business Forms, Inc., ("EBF"), obtained access to Whatman's secret and confidential information concerning the blood cards sold by Whatman. The complaint further alleges that Davin took steps to create a competing blood card business in October 2007, left his employment with EBF in February 2008, soon started his own

company, defendant ID Biological Systems, LLC ("ID Biological"), and began sharing Whatman's secret, confidential information with Whatman's competitor, Ahlstrom.

The plaintiff alleges causes of action for misappropriation of trade secrets and confidential and proprietary information; unfair competition; unjust enrichment; breach of fiduciary duty - against Davin; conversion; and aiding and abetting breach of fiduciary duty - against IDB. The defendants responded with counterclaims alleging conspiracy, bad faith, interference with contractual relations, and predatory antitrust violations.

## **ANALYSIS**

A motion to dismiss the defendants' original antitrust counterclaim is currently pending before Judge Harwell. According to the defendants, the amended pleading would "provide greater detail and factual support for defendants' antitrust claims against Whatman" and would moot the plaintiff's motion to dismiss (def. m. to amend 1). The defendants also seek to amend their answer to add EBF as a required counterclaim defendant. The defendants contend that "evidence was recently discovered tending to indicate that Whatman is engaged in an ongoing antitrust conspiracy with [EBF]. Davin and IDB allege in the Amended Answer that Whatman and EBF are conspiring in violation of 15 U.S.C. § 1 to harass Davin and IDB through litigation and unfair competition, with the ultimate purpose of driving IDB – Whatman's only competitor – out of business" (def. m. to amend 3). The defendants argue that joinder will not prejudice EBF as "EBF is already engaged in litigation against Davin and IDB since 2008, whereupon EBF filed a concurrent state-court action against Davin and IDB in the Court of Common Pleas, Greenville County South Carolina. Civil Action No. 08-CP-23-2966" (def. m. to amend 4).

The defendants and EBF oppose the motion to amend. They argue that the motion is untimely as motions to amend were to be filed no later than May 1, 2009, under

2

the scheduling order. No discovery has been taken on the original antitrust counterclaim[1] as discovery on the counterclaim was stayed pending ruling on the motion to dismiss. They further argue that the proposed amendment would raise entirely new issues and require substantial discovery, which would be highly prejudicial to the plaintiff and EBF, and the proposed counterclaims are legally and factually deficient, rendering the proposed amendment futile.

*Standard*

"Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading 'shall be freely given when justice so requires.'" *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1043 (4th Cir. 1984) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Leave to amend should be denied only when "'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *Alonso v. McAllister Towing of Charleston, Inc.*, 595 F. Supp.2d 645, 648 (D.S.C. 2009) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir.1999)).

*Timeliness*

Under the scheduling order, motions to amend were to be filed no later than May 1, 2009. The plaintiffs argue that defendant Davin knew long before that deadline the facts underlying the newly proposed counterclaims. The defendants, however, note that IDB was not made a party to the lawsuit until May 13, 2009. The defendants argue they have demonstrated "good cause" to extend the deadline under Federal Rule of Civil

---

[1] The antitrust counterclaim was originally asserted on June 22, 2009, in the defendants' answer to the amended complaint. The plaintiff thereafter filed a motion to dismiss the counterclaim on July 9, 2009. The plaintiff's motion to stay discovery on the counterclaim was granted on November 2, 2009.

Procedure 16(b)(4). This court agrees. The defendants contend that "the anticompetitive acts alleged almost all occurred subsequent to the filing of this lawsuit" (def. reply 5). Specifically, the defendants note that "well after the filing of this lawsuit, [they] learned of a specific instance where Whatman refused to sell its patented FTA Suite Paper to a customer unless that customer also purchased all of its neonatal screening cards from Whatman as well," which "if proved, could constitute monopoly leveraging that would support Defendants' proposed counterclaims of monopolization and attempted monopolization" (def. reply 5-6). The defendants also argue that they have learned and continue to learn of specific examples of the plaintiff's disparagement of IDB. Further, as to the predatory pricing allegations, the defendants contend they did not learn of Whatman's actual bid until April 30, 2009, the day before the deadline for motions to amend pleadings. Based upon the foregoing, the motion to amend should not be denied as untimely.

*Prejudice*

The plaintiff and EBF argue that they will be prejudiced if the defendants are allowed to amend their antitrust counterclaims. However, as pointed out by the defendants, they could bring a stand-alone action against the defendants, and allowing these claims as counterclaims in this action will thus result in greater efficiency and judicial economy and less burden imposed on all parties and the court. Further, antitrust discovery has already been stayed by this court, and the plaintiff has requested, if the defendants' counterclaims are allowed, that the court bifurcate the litigation. As to EBF's argument that it will suffer undue prejudice if it is added as a party because "many depositions have been taken in this case," the defendants note that EBF's counsel has made an appearance in every deposition that has been taken thus far. Furthermore, as discovery has been stayed on the

4

antitrust issue, EBF will not be prejudiced because no depositions concerning the antitrust counterclaims have yet occurred.

*Futility*

The plaintiff and EBF contend that the defendants' antitrust counterclaims contain little more than boiler-plate recitations of the elements of their claims and legal conclusions and, therefore, are not sufficient pursuant to the heightened pleading standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). Under the pleading standard set forth by the United States Supreme Court in *Twombly*, all federal antitrust claims must now include "[f]actual allegations" sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. They must allege more than merely potential grounds for relief, reciting "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [antitrust violations]." *Id.* at 556. The plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Id.* at 570. Given the enormous costs and burdens of antitrust litigation, and to avoid unfairly "push[ing] cost-conscious defendants to settle even anemic cases before reaching [summary judgment] proceedings," the Supreme Court has therefore urged trial courts to weed out inadequate antitrust complaints before discovery. *Id.* at 559. As the Supreme Court recently re-emphasized, simply asserting a claim, even one in compliance with Rule 8, "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009) (finding that, although plaintiff's allegations of discrimination set forth a possible claim, they did not allege a plausible claim).

This court has reviewed the memoranda and exhibits submitted by the parties and finds that the defendants' allegations set forth plausible counterclaims of Actionable Monopoly Power (Proposed Counterclaims 7 and 8); Monopolization or Attempted

5

Monopolization through Misrepresentations to Customers (Proposed Counterclaims Seven and Eight); Monopolization, Attempted Monopolization, or Conspiracy to Monopolize through Exclusive Dealing (Proposed Counterclaims Seven, Eight, and Nine); and Predatory Pricing (Proposed Counterclaims Seven and Eight).

The defendants' proposed counterclaims allege (see Amended Answer and Counterclaims, ¶ 110) that prices were at supracompetitive levels prior to IDB's inception, which the defendants claim is actual proof of Whatman's monopoly power to control prices. Whatman's primary futility argument is that, absent allegations of specifically-identified high entry barriers, the defendants cannot possibly prevail on any of their Section 2 counterclaims. The defendants alleged barriers to entry in their proposed counterclaims, specifically: (1) the difficulty associated with having to independently develop a new specialized filter paper; and (2) the fact that it can take up to two years to develop and license a neonatal specimen collection device (Amended Answer and Counterclaims, ¶ 74). Further, while the defendants do allege that Whatman has market share consistent with monopoly power, their allegations of Whatman's monopoly power are not based on market share alone. The defendants also make allegations regarding Whatman's ability to control prices. Specifically, the defendants allege that Whatman's last contract price to California when it was the sole supplier was $850 per thousand cards (Compilation of Bid Data, ex. J to Counterclaims). Whatman's winning bid after IDB entered the market was only $211 per thousand cards. Similarly, Whatman's last price to Texas was $630 per thousand cards. Its winning bid against IDB was a mere $285 per thousand cards (*see id.*).

Whatman also argues that the defendants have not plausibly alleged that the misrepresentations in their counterclaims for Monopolization or Attempted Monopolization through Misrepresentations to Customers were more than *de minimis*, by virtue of being: (1) clearly false; (2) clearly material; (3) clearly likely to induce reasonable reliance; (4) made to unknowledgeable buyers; (5) continued over time; and (6) not susceptible to

6

neutralization or other offset.  However, as argued by the defendants, even under *Twombly* and *Iqbal*, a claimant is not required to prove his case – without the benefit of any discovery – in his initial pleading.  Here, it is at least plausible from the defendants' counterclaims that they will ultimately be able to show the effect was more than *de minimis.*

As to the defendants' proposed counterclaims for Attempted Monopolization or Conspiracy to Monopolize through Exclusive Dealing, the plaintiff contends the exclusive agreement between Whatman and EBF could not have foreclosed competition because, as "defendants expressly allege," Whatman itself utilized another printer, Belknap (pl. m. to amend opp. 21).  However, the defendants also alleged that, once Whatman acquired S&S, it promptly ceased manufacturing its own neonatal product line, thereby driving Belknap out of business.  Prior to IDB, there was no other filter paper manufacturer in the market in need of a printer.  Likewise, there was no other printer capable of producing filter paper-based biological specimen collection devices.  That is why IDB has had to perform its printing "in house."  As argued by the defendants, whether Whatman economically coerced EBF into its exclusive arrangement or whether the agreement was part of a conspiracy to drive IDB from the market, the exclusive dealing agreement plausibly suggests a significant barrier to entry in the market.  Moreover, the defendants do not allege the agreement, by itself, is anticompetitive, but rather that it is part of a pattern of anticompetitive acts of Whatman (and EBF).

As to the defendants' predatory pricing counterclaims, the defendants specifically allege that Whatman priced below any "appropriate measure" of its costs. *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222 (1993). To "prevail on a predatory pricing claim, a plaintiff must demonstrate that:  (1) the prices complained of are below an appropriate measure of its rival's costs; and (2) there is a dangerous probability that the defendant will be able to recoup its investment in below-cost prices" (pl. m. to amend opp. 22) (quoting *Pacific Bell Tel. Co. v. Linkline Comms., Inc.*, 129

7

S.Ct. 1109, 1120 (2009) (citing *Brooke Group Ltd.*, 509 U.S. 209, 222-24)). The defendants stated in their counterclaims that Whatman's prices on two neonatal bids to Louisiana were "far below IDB's cost" and that, based upon knowledge of its own cost and "information and belief," "the costs of manufacture in this market do not vary from manufacturer to manufacturer so substantially that a manufacturer could produce 1000 unites at the price quoted by Whatman unless it was bidding below any appropriate measure of cost" (Amended Answer and Counterclaims, ¶ 111). As argued by the defendants, prior to discovery, they can do no more than plausibly allege upon information and belief, as they have, that Whatman's prices were below any appropriate measure of its own costs. The defendants alleged the specific bids challenged, the amount of these bids, IDB's own costs associated with these bids, and IDB's reasoning for believing Whatman's costs could not be so different from its own that it was not pricing beneath any appropriate measure of its own costs (Amended Answer and Counterclaims, ¶ 111).

    The defendants further move the court pursuant to Federal Rule of Civil Procedure 19(a) to join EBF as a required party to this action. They claim that during their investigation, evidence was recently discovered tending to indicate that the plaintiff is engaged in an ongoing antitrust conspiracy with EBF. Davin and IDB allege in the Amended Answer that Whatman and EBF are conspiring in violation of 15 U.S.C. § 1 to harass Davin and IDB through litigation and unfair competition, with the ultimate purpose of driving IDB – Whatman's only competitor – out of business. EBF is "subject to service of process and [its] joinder will not deprive the court of subject-matter jurisdiction"; but, more importantly, "the court cannot accord complete relief" to Davin and IDB without joining EBF as party to this action. Fed.R.Civ.P. 19(a). Based upon the foregoing, this court recommends that EBF be joined as a party.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the defendants' motion to amend (doc. 103) should be granted. Should Judge Harwell adopt this recommendation, the issue of bifurcation is left for the district court's consideration.

IT IS SO RECOMMENDED.

                                                        s/William M. Catoe
                                                        United States Magistrate Judge

December 14, 2009

Greenville, South Carolina